# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLLINOIS

LINDA HOVORKA, Individually and on
behalf of all others similarly situated,

     Plaintiffs,

                                  Case No: 1:23-cv-05192
                                  Class and Collective Action

v.

SELECT REHABILITATION LLC

     Defendant.

_____.

## HYBRID CLASS ACTION AND FLSA SECTION 216B COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF ILLINOIS OVERTIME WAGE LAWS AND THE FLSA

Plaintiff, LINDA HOVORKA, individually, and on behalf of all others similarly, sues Defendant, SELECT REHABILITATION LLC. (hereinafter "Select" or "Defendant") pursuant to 29 U.S.C. 216(b), of the Fair Labor Standards Act (the "FLSA") for willful violations of the FLSA and violations of the Illinois state overtime wage law at 820 ILCS 105/4a, (the "IMWL") and states as follows:

## INTRODUCTION

1.     In a scheme to avoid paying overtime wages and save millions of dollars in labor costs, Select willfully failed and refused to pay overtime wages to hourly-paid, non-exempt **Therapists, including Occupational Therapists (OTR), Certified Occupational Therapy Assistants (COTA), Physical Therapists**

**(RPT), Physical Therapist Assistants (PTA), and Speech Language Pathologists (SLP) (hereinafter collectively referred to as "Therapists")** who have been permitted to suffer to work off-the-clock, including but not limited to the named Plaintiff and all the opt-in Plaintiffs in this case.

2.     Plaintiff herein individually and on behalf of all others similarly situated, commences this Rule 23 Class Action Complaint against Defendant for willful violations of the Illinois Minimum Wage Act's overtime provisions for all putative class members who worked anytime in the preceding three (3) years to the present and continuing.

3.     Additionally, Plaintiff commences this FLSA section 216(b) Collective Action Complaint against Select for willful violations of the FLSA's overtime wage provisions for all persons similarly situated who worked anytime in the preceding three (3) years to the present and continuing.

4.     The Illinois state wage law follows the FLSA, making it unlawful to not pay hourly, non-exempt employees such as Hovorka and all other Illinois Therapists, overtime premiums for all hours worked over 40 in each and every workweek.

5.     Pursuant to a national, common policy and plan, Plaintiff and the class or classes of similarly situated current and former employees worked from approximately 2,300 or more locations of medical/rehabilitation facilities

nationwide. Therapists were forced, coerced and/or encouraged to work off-the-clock without being paid overtime premiums for such compensable hours. Select knew Therapists worked off-the-clock, nit failed and refused to pay overtime compensation as part of its scheme to avoid overtime wages and save millions of dollars in labor costs.

6.      Defendant is no stranger to the claims of the Plaintiffs and all others who eventually opt into this action and consent to join as 'party plaintiffs' given that Select is already being sued in a related California Class action lawsuit for unpaid overtime wages in the case of:   *RATI GANDHALES, V. SELECT REBILATIONS LLC*, Case N0 20CV002240, in the Superior Court of the State of California, County of Monterey.

7.      Similarly, Select is currently a Defendant in a lawsuit for overtime wage violations under the FLSA and the Illinois Minimum Wage Laws in the pending action of Mclaughlin, Vanderveen and Lembke v. Select Rehabilitation LLC, Middle District of Florida, Case No:    3:22-cv-00059-HES-MCR. The McLaughlin case was commenced in January 2022 and put Defendant on notice that employees across the Illinois and the United States were working off-the-clock.

8.      Currently, upwards of 1,100 present and former employees are 'party-plaintiffs' in the McLaughlin case, including over 800 therapists. Many of these Therapists are also Illinois Therapist class members and who worked for Defendant

in Illinois. The Court conditionally certified the action to proceed as a collective. After the notice phase, over 1100 present and former employees of Select joined and opted into the action to assert their claims for unpaid overtime wages.

9.      Furthermore, many Illinois therapists and Program Managers have attested to in declarations that they routinely were subjected to suffering to work overtime hours, off the clock with the knowledge and behest of Defendant. Thus, Defendant has known prior to this date that Illinois Therapists have worked off the clock and cannot deny the same.

10.      Additionally, in a similar case filed on June 17, 2021 in the District Court of Arkansas by a therapist claiming unpaid overtime hours because of off the clock work. Defendant settled this case and paid the plaintiff overtime backwages in settlement, and was on notice that therapists were working off the clock even preceding the Mclaughlin Complaint and this complaint herein.   See *Herbert v. Select Rehab LLC* case, 4:21-cv-00524-JTK

11.      Plaintiffs, and the class of similarly situated employees, were unlawfully not compensated for all hours worked over forty (40) in each and every workweek by a scheme and plan of Defendant to evade the sate and federal overtime wage laws and save millions of dollars in labor costs to the detriment and harm of Plaintiffs and all other similarly situated present and former employees.

12.     While Defendant did have a system for hourly employees to clock in and out their work hours, Defendant maintained a De Facto policy that Therapists were to only report work hours that kept them to an assigned productivity and efficiency level (%).

13.     Defendant, by and through its management, knows that Therapists, routinely worked overtime hours off the clock.

14.     Area managers were well informed that Therapists routinely and pervasively worked off-the-clock overtime hours. Thus, Defendant had actual knowledge of unpaid overtime hours. Defendant pressured Therapists on a weekly basis to work overtime hours as needed to meet their productivity goals. To meet their productivity goals, Therapists were required to work off-the-clock, because overtime hours would destroy their productivity requirements.

15.     There was a clear De Facto Policy that three (3) failures of Therapists' productivity requirement would result in termination of employment.

16.     Defendant's managers and superiors over the Plaintiff and those similarly situated in the putative class who themselves had worked in these same positions, also worked overtime hours off the clock and thus are well aware that working more than 40 hours in the workweek was necessary to complete these job duties and responsibilities and to avoid the risk of termination of their employment.

17.     Moreover, Defendant never foreclosed Plaintiff and all others similarly situated from accessing the office, computer systems and databases outside the standard or regular business hours or on weekends to prevent or preclude off the clock work. Defendant could see the access, login, and activity times and when time Therapists worked off the clock, such as on weekends.

18.     Indeed, Defendant knew that Therapists all over the U.S. routinely accessed systems, databases and programs, while off the clock, and while away from the office including on weekends and using a company provided laptops or tablets.

19.     Defendant similarly knew that Therapists like Plaintiff were accessing Defendant's programs, software and systems on office computers and tablets while off the clock and management saw them and other Therapists routinely doing the same well after they finished treating their last patients, and even into the evening hours.

20.     Defendant openly turned a "blind eye" to all the off the clock work for financial reasons, while pressuring, coercing, intimidating, and encouraging Therapists to work to hit their productivity goals and complete their job duties and not report all hours worked.

21.     Defendant has willfully failed to pay Plaintiff, and all similarly situated persons in accordance with the Illinois Minimum Wage Law (IMWL). Specifically, Plaintiff and the similarly situated class members were not paid time and one half of

their regular rate of pay for all hours worked in excess of forty (40) hours per week, nor paid a premium for all overtime hours worked.

22.     Plaintiff, and the class of similarly situated employees, did not and currently do not perform work that meets the definition of any exemption under the IMWL (which follows the FLSA), and the Defendant's pay practices are not only intentionally and willfully in clear conflict with these laws and related regulations, but are also grossly unfair such as to be akin to the intentional and willful theft of wages from thousands of employees in the State of Illinois where Defendant maintains offices and operates in upwards of 150 or more locations, facilities.   See Defendant' Press release at:  https://www.selectrehab.com/press-releases/2020-12-01.

23.     Regardless, the named Plaintiff and all those similarly situated were not paid on a salary basis and thus not subject to the administrative, executive or any exemption under the FLSA or the IMWL such that Defendant was required to have paid them premiums for all overtime hours they knew or should have known were worked in each and every workweek.

24.     In this pleading, "Defendant" means the named Defendant and any other subsidiary or affiliated and wholly owned corporation, predecessor corporation, or any parent corporation or entity responsible for the employment

practices complained of herein (discovery may reveal additional defendants that should be included).

25.    The allegations in this pleading are made without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proof, or persuasion.  Plaintiffs reserve all rights to plead in the alternative.

## JURISDICTION AND VENUE

26.    This is an action for a sum which is greater than $5,000,000.00, and Plaintiff's claim is also greater than $75,000.

27.    This Court has subject matter jurisdiction over this action pursuant to 28 US Code § 1332 - Diversity of citizenship, as Plaintiff is a resident of this state and Defendant is a Delaware corporation and a foreign corporation.

28.    This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act (CAFA).  The amount in controversy exceeds $5,000,000 and upon information and belief, there are numerous members of the proposed Class who are citizens of a State different from the State of Citizenship of Reliant Rehab

29.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, because this action involves a federal question under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

30.     Alternatively, and additionally, this Court has Jurisdiction over this action as the parties are citizens of different states, as Defendant is a Delaware Corporation, and Plaintiff is a citizen of this state.

31.     Further, numerous class members are citizens of different states. Throughout the preceding history, and presently, numerous Class members lived and resided in states other than Illinois while employed with Defendant, or currently are residents of other states.

32.     This Court has Supplemental Jurisdiction over the Illinois State Law claims wage claims and thus the Rule 23 class action for all others similarly situated pursuant to 28 U.S.C. §1367.

33.     The Court has simultaneous jurisdiction over the FLSA claims.  See *Calderone, et al. v. Scott,* No. 2:14-cv-00519-JES-CM (11th Cir. Sept. 28, 2016) (holding that "a § 216(b) collective action and a state-law Rule 23(b)(3) class action may be maintained in the same proceeding.").

## **THE PARTIES**

34.     Plaintiff, LINDA HOVORKA resides in Illinois and within this District.  She was hired by Defendant approximately in June 2012 as Physical Therapy Assistant (PTA) and worked for Defendant in this state at several different locations until approximately April 2022 as an hourly paid, nonexempt Therapist.

35.     Plaintiff was paid on a semi-monthly basis (2 times per month), and strictly on an hourly pay basis, last at $35.00 per hour.

36.     Plaintiff Hovorka routinely worked off the clock hours over 40 in the workweek to meet the productivity requirements and maintain her employment, and found that working more than 40 hours in a week was necessary to complete all the required job duties.

37.     Defendant classified Plaintiff and all others similarly situated as non-exempt, hourly paid employees.

38.     During the relevant 3 year class period  to the present, Defendant paid all therapists on an hourly pay basis and classified all as non-exempt from overtime pay under state and federal law. Therapists were paid as hourly, non-exempt employees during the 3 years preceding the filing of this complaint.

## Defendant SELECT REHABILITATION LLC

39.     Defendant, SELECT REHABILITATION LLC (hereinafter Defendant and/or "Select"), is a Foreign (Delaware) for Profit Limited Liability Corporation, with its principal place of business located at 2600 Compass Rd, Glenview, IL 60026, and who all times material hereto, has routinely and consistently conducted business in the State of Florida through its numerous fixed offices and locations, including in this district.

40.      As stated by Defendant on their website, Defendant is a company which is: "The premier provider of contract rehabilitation, as well as for nurse and therapy consulting services" and employs over 17,000 therapists in the U.S."

41.      Defendant also reports that it has 2,300 facilities operating in 43 States in the US, including numerous locations in Florida and within this District. Upon information and belief, Defendant employs anywhere from 5 to 20 or more therapists (including pathologists) at these locations, even more if counting per diem therapists, such that Defendant employs nearly 32,000 or more employees whose rights are affected by this case and who are similarly situated to Plaintiff Hovorka.

42.      Defendant is an employer within the definition of the FLSA, has revenues exceeding $500,000 annually and employs more than 2 persons and thus is required by the FLSA to pay overtime premiums to Plaintiffs and all those similarly situated.

43.      Likewise, Defendant is an employer who is subject to the IMWL and the overtime pay requirements pursuant to Illinois law, employing hundreds of persons in this state.

## FLSA COLLECTIVE ACTION ALLEGATIONS

44.      This FLSA section 216b collective action arises from a longstanding and continuing wrongful scheme by Defendant to: a) willfully fail to accurately and properly track and record the work hours of Therapists, and b) willfully refuse to pay

overtime wages to a large class or classes of non-exempt, hourly paid employees who Defendant knows or should have known, were working off the clock and working overtime hours without being paid for all such hours.

45.     Plaintiff brings this suit individually, and on behalf of all similarly situated persons composed of the following Class members in either a single class of similarly situated:

**All persons employed as Therapist including: Occupational Therapists (OTR), Physical Therapists (RPT), Certified Occupational Therapy Assistants (COTA), Physical Therapist Assistants (PTA), Speech Language Pathologists (SLP), or other persons performing similar hourly, non-exempt positions under various other job titles used to describe the same positions, and who are currently employed by, or were previously employed by Select Rehabilitation LLC in the U.S. within the three years preceding the filing of this lawsuit to the date of trial in this action.**

46.     Plaintiff is able to protect and represent the Collective or putative Illinois Class, and she is willing and able, and herein consents to participating in this FLSA collective action by the filing of this complaint and as stated herein.

47.     Plaintiff Hovorka is familiar with the pay practices, company policies and procedures going back to 2020 and thus each year within the relevant 3-year class period.

48.     Plaintiff routinely worked more than forty (40) hours in her workweeks throughout the term of her employment with Defendant.

49.     The precise amount of overtime hours spent are largely contained in the Defendant's records from the activity logs, and time stamp data from accessing and performing work in Defendant's programs and systems, records which Plaintiff will seek to obtain in discovery to be able to more precisely be able to determine her overtime wages owed, in addition to phone records.

50.     Plaintiff Hovorka was assigned a productivity requirement of 85-92% meaning that she needed to be billing out (primarily to Medicare) this percentage of her total weekly work hours or time as treatment, while also handling his administrative responsibilities, notes and reporting.

51.     To meet this productivity requirement, Plaintiff Hovorka was mandated by Defendant to document and bill 8 hours of work and treat patients for 8 hours a day, and thus routinely had to work more than 40 hours in the workweek to complete all job duties and responsibilities, including inputting and entering notes and to complete the reporting requirements.

52.     Plaintiff informed her superior and others in Management about the overtime hours needed to be performed to maintain the productivity and complete all the data entry, therapy, treatment of patients, required notes, billing and reporting requirements. Management's response was that the therapist must meet productivity requirements (%) or will be subject to discipline and termination of employment.

53.     Thus Hovorka, like other Therapists, was left with a choice: suffer to work off the clock overtime hours or do the work on the clock and find herself disciplined and subject to termination of employment.

54.     Hovorka could not cancel therapy appointments on the last day of the workweek, or any other days to avoid incurring overtime hours. The treatment of patients, documentation and notes and attending required meetings was never a precise set amount of time such that during the week she would not know each day the exact amount of time she would need to work, or the total she would have by the end of the week or last day of the workweek.

55.     In addition to working her regular 40 hours of work, Hovorka would routinely work anywhere from 30 minutes per day and longer to complete notes and do so off the clock like other Therapists at the same facilities.

56.     Hovorka also had to utilize meal break times to perform work off-the-clock to maintain her daily and weekly productivity requirements.

57.     The precise amount of overtime hours spent are believed to be primarily contained in the Defendant's records from the activity logs, and time stamp data from Defendant's programs and systems, records which Plaintiff will seek in discovery to be able to more precisely be able to determine the overtime wages owed.

58.     From the beginning of Hovorka's employment, Select explained the **Company De Facto Policy** or rule: do whatever you have to in order to meet

productivity goals or requirements, and including working off the clock, but don't complain about unpaid overtime hours or working off the clock.

59.     Plaintiff Hovorka, for herself, and on behalf of the putative class of similarly situated who elect to opt-in to this action, claim herein that they are entitled to unpaid wages from Defendant for unpaid overtime work performed for which they did not receive overtime premium pay as required by the FLSA at time and one half their regular rates of pay.

60.     Defendant employs, upon information and belief and investigation from representations made by Defendant on their own website, upwards of 17,000 therapists working from 2300 facilities or locations within 43 states.  Each of these facilities is believed to have at least 5 or more therapists, and thus with turnover, the class size for therapists nationally is about 30,000, and about 2000 for Illinois Wage Class.

61.     Defendant maintains a nationwide single job description for each of the Therapist or Therapy positions.

62.     Further, upon information and belief, all persons employed as Therapists have been required to perform their job duties in a uniform, similar manner; all are supervised and managed according to the same national standards and required to work under uniform policies and procedures set by the Defendant applicable to all offices or locations.

63.     The Defendant maintains a Nation-wide company policy, and thus an Illinois company policy throughout the relevant three (3) year class period of willfully refusing to pay overtime wages for all overtime hours worked by Therapists, including Plaintiff, who have routinely worked overtime hours which are unreported and "off the clock" and which Defendant knew of and should have known about.

64.     Defendant maintains a strict labor budget at each office or location, tied to Medicare billing and their "productivity rates." Throughout the Plaintiff's employment it was made clear to Therapists, that asking for the fictitious and illusory pre-approval of overtime hours would not only just be denied, but would also draw the ire of their superiors and put a target on their backs for termination of their employment.

65.     Upon information and belief, all Therapists are supervised by Directors of Rehab, Program managers and Regional Managers and VP's who very closely monitor their performance, productivity requirement and are aware when employees performed work outside or away from the office, or while off the clock.

66.     The overtime wage provisions set forth in FLSA §207 apply to Defendant and Defendant admits the same. Indeed, at all relevant times, Defendant's employee manual and company policies inform hourly paid employees such as

Plaintiff and all other Therapists that they were entitled to be paid premiums for overtime hours worked at time and one half their regular rates of pay.

67.     Plaintiff, and all other similarly situated employees are currently or have previously been covered under FLSA §207.

68.     Pursuant to FLSA §207, Defendant, as the employer of Plaintiff and other similarly situated Therapists was and is still required to pay one and one-half times each employee's hourly rate for hours worked in excess of forty (40) hours per week.

69.     Defendant's overtime policies were circular and illusory. Therapists were subject to the proverbial chicken and egg type game - do not claim or seek to claim overtime without pre-approval - while simultaneously discouraging reporting or complaining about the overtime hours incurred and worked.

70.     Defendant discourages reporting of overtime hours and turns a "blind eye" to all the off the clock work because its primary revenue is from Medicare and the company scrutinizes all the hours and minutes of all the work performed by its staff as compared to the billing to Medicare to maximize profits.

71.     Therapists' treatment minutes are tallied and put into a program or application and then compared to their work hours and scrutinized by management. If productivity is low, meaning not treating enough patients within the assigned 40 hours of paid time, Therapists are subject to discipline.

72. Thus, Therapists are strongly discouraged against working on the clock for their routinely required overtime hours of work, which is necessary in order for each person to complete the administrative work, reporting, and notes.

73. Defendant has not, throughout the relevant three (3) year class period, accurately and properly clocked, tracked or recorded the actual working hours of Therapists in all of their facilities or locations throughout the U.S.

74. If Plaintiff Hovorka or any Therapist failed to timely and completely input and log in all their treatment notes and reporting, they be in violation of regulations and standards of professionalism, which may also subject them to termination of employment. Accordingly, they had to perform such paperwork off-the-clock.

75. All Therapists were trained to perform their job duties and expected to perform their job duties in respectively similar manners throughout all the Select Rehab locations on a national basis.

## ALLEGATIONS FOR ILLINOIS WAGE ACT VIOLATIONS AND RULE 23 ILLINOIS CLASS ACTION

76. Plaintiff HOVORKA brings and asserts her Illinois Minimum Wage Law (IMWL) overtime pay violations individually, and on behalf of similarly situated Illinois employees, and for each subsequent opt-in party Plaintiffs from Illinois, and pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf, and on behalf of the following putative class of similarly situated:

**All persons employed as Therapists in the positions of or titles of: Occupational Therapists (OTR), Physical Therapists (RPT), Certified Occupational Therapy Assistants (COTA), Physical Therapist Assistants (PTA), Speech Language Pathologists (SLP), or other persons performing similar hourly, non-exempt positions under various other job titles, and who are currently employed by, or were previously employed by Select Rehabilitation LLC in Illinois, within the three years preceding the filing of this lawsuit to the date of trial in this action.**

77. Defendant's facilities in Illinois follow the same policies and practices as the rest of Defendant's facilities in the U.S.

78. All Therapists in the state of Illinois, within the preceding 3 years were classified as hourly, non-exempt employees entitled to be paid time and one half for all hours worked in excess of 40 in each and every workweek.

79. In Illinois, Defendant maintained a De Facto policy under which Hovorka and all putative class members, all suffered to work overtime hours off the clock in order to complete all their job duties and maintain Defendant's productivity requirements.

80. Plaintiff routinely worked more than 40 hours per week, with the knowledge of their direct managers throughout the weeks occurring during the relevant class period of 3 years preceding the filing of this complaint to the present.

81. The Rule 23 Class is so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiff reasonably estimates there are

2000 or more Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendant's electronic payroll and personnel records.

82.     Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Illinois class as a whole.

83.     Additionally, prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

84.     The individual overtime claims can be small, and therefore unlikely to be adjudicated on an individual basis and thus the prospect of no adjudication is inferior to the class action alternative.

85.     Numerosity is satisfied as upon information and belief, Defendant has or currently operates upwards of 75 to 150 or more locations in the State of Illinois from which they employ upwards of an average of 7 Therapists at each location, including the following locations:  Ambassador Nursing and Rehab, Belhaven Nursing and Rehab, Berkeley Nursing and Rehab, City View Multicare Center Continental Nursing and Rehab,  Forestview Rehab and Nursing, Hope Creek Nursing and Rehab, Lakeview Rehab and Nursing, Midway Neurological Rehab Center, Momence Meadows Nursing and Rehab, Niles Nursing and Rehab, Oak

Lawn Respiratory and Rehab, Parker Nursing and Rehab, Parkshore Estates Nursing and Rehab, Southpoint Nursing and Rehab, West Suburban Nursing and Rehab, Landmark of Des Plaines Rehab and Nursing, Wheaton Care Center, Little Village Nursing and Rehab, Lemont Nursing and Rehab, Lakewood Nursing and Rehab, Estates of Hyde Park, Tri-State Nursing and Rehab, Landmark of Richton Park Rehab and Nursing, Kensington Place Nursing and Rehab, Countryside Nursing and Rehab, St. James Wellness Rehab and Villas, Lincolnshire Health and Rehab, Prairie Manor Nursing and Rehab, Spring Mill Health Campus, Sheridan Village Nursing and Rehab, South Suburban Rehab Center. Plaintiff estimates there are approximately up to 1000 persons in the Illinois class and higher depending on turnover.

86. Common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Illinois Class and are identical for all class members including:

      a. Whether Defendant violated the IMWL by failing to pay premium compensation to the Illinois Class members who worked in excess of forty (40) hours per week;

      b. Whether Defendant violated IMWL by failing to keep accurate records of employees' hours worked;

c. Whether the Plaintiffs in the Illinois Class were willfully permitted to suffer to work off the clock and pursuant to a De Facto policy against reporting overtime hours or working overtime hours on the clock in violation of the state overtime wage laws;

d. Whether Defendant knew or should have known that Therapists were working off the clock, including overtime hours without being paid for all such hours or had actual or constructive knowledge of the off the clock work;

e. Whether the Defendant acted willfully in violation of the law such that a 3-year SOL should apply;

f. Whether Defendant's actions and pay practices lacked a good faith basis under the Illinois Minimum Wage Law for its actions such that treble damages should be awarded; AND

g. The proper measure of damages sustained by members of the Illinois Class and the restitution owed to them.

87. Plaintiff Hovorka's claims are typical of those of the Illinois Putative Class and the Illinois opt-in Plaintiffs from the ongoing, McLaughlin v. Select Rehabilitation collective action overtime wage case, some who have also submitted declarations filed in that action confirming that they suffered the same unlawful pay practices as Hovorka. Plaintiff Hovorka, like other members of this putative class,

routinely and pervasively throughout their term of employment within the relevant 3-year class period, worked overtime hours off the clock and were subjected to Defendant's unlawful pay practices, including the De Facto policy against working on the clock when working required overtime hours.

88.    Hovorka's primary job duties and responsibilities as a PTA were also typical of other members of the Illinois Class, handling patient issues, patient treatment, productivity requirements, and all other responsibilities as published in the Company job description applicable to all Therapists.

89.    Further, Hovorka as a PTA, had similar if not identical job duties and responsibilities of all other PTA's and as stated in the Company Job Description, and similar job requirements for all Therapists, which primarily included providing therapy for patients within her medical specialty and completing mandated treatment or therapy notes in the EMR.

90.    All Illinois Therapists were all classified as hourly, non-exempt employees and who comprise the putative class.

91.    Plaintiff Hovorka will fairly and adequately represent and protect the interests of the putative members of the Illinois Class because she has no disabling conflict(s) of interest that would be antagonistic to those of the other class members, and specifically Hovorka is a member of the Illinois Class.

92.     Plaintiff Hovorka has retained legal counsel who is competent and experienced in class and collective action wage and hour litigation, including Illinois wage claims and other state overtime class actions.

93.     Defendant has acted on grounds that apply generally to the Illinois Class in that it has common policies and practices of: (a) refusing to pay overtime compensation for all hours worked and permitting class members to suffer to work off the clock; (b) failing to maintain and provide accurate itemized wage statements to all members of the Illinois Class.  Accordingly, injunctive and declaratory relief is appropriate for the Illinois Class as a whole.

94.     Class treatment is superior to alternative methods to adjudicate this dispute because Plaintiff Hovorka and the similarly situated Illinois Class Employees suffered similar treatment and harm as a result of systematic policies and practices, including the unlawful pay practice of permitting them to suffer to work off the clock pursuant to a company De Facto policy, and because absent a class action, Defendant's unlawful conduct will likely continue unremedied and unabated given that the damages suffered by individual class members are small compared to the expense and burden of individual litigation.

95.     Class certification is also superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendant's practices.  Because the elements of Rule 23(b)(3) are satisfied in this

case, class certification is appropriate. See *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins.,* 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

96.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Classes and declaratory relief is appropriate in this case with respect to the Rule 23 Classes as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## VIOLATIONS OF FLSA §207 AND DECLARATORY ACTION PURSUANT TO 28 U.S.C. SECTIONS 2201 and 2202

97.     Plaintiff realleges and incorporates by reference paragraphs one (1) through seventy-five (75) of this Complaint and fully restate and reallege all facts and claims herein as if fully stated.

98.     Defendant has willfully and intentionally engaged in a common pattern and practice of violating the provisions of the FLSA, by failing to pay all Therapists and others performing similar job duties under various job titles, the required overtime wages and premiums for all hours worked over 40 in each and every work week.

99.     Defendant knew and knows that Plaintiff and all other similarly situated Therapists routinely performed work off the clock.

100. Defendant knew that Hovorka and all other similarly situated Therapists were working off the clock to maintain productivity while complying with Select's De Facto policy requiring work off the clock to complete all their job duties.

101. The double-edged sword as expressed to the Therapists by Defendant's managers was: i.) if you worked overtime hours on the clock and/or reported all your actual work hours it would destroy your "productivity" metrics, leading to discipline or termination; BUT ii.) Therapists were so loaded with patients all day long such that it was necessary and inherent in the job to have to complete all their notes and job duties off the clock. If they failed to perform all of these job duties, Therapists risked their own licenses and also risked termination of employment.

102. Plaintiff and fellow Therapists were not permitted to and prohibited from just canceling patients from their schedules in order to be certain the work would not put them into overtime hours.

103. Defendant had a duty and obligation under the FLSA and CFR part 516, to contemporaneously track and record all work hours of hourly non-exempt employees, including Therapists and other persons performing similar roles under any job titles.

104. Defendant's unlawful conduct of turning a blind eye to clearly inaccurate time records which included understatements of Therapists' actual

working hours, resulted in a willful violation of the overtime wage law under the FLSA, and throughout the 3 years preceding the filing of this complaint to the present.

105. Defendant's actions constitute permitting Plaintiff and all other Therapists to suffer to work off the clock without being paid overtime compensation for all hours worked in excess of forty.

106. The FLSA requires any employer who has actual or constructive knowledge of employees working off the clock to either cease and stop the conduct or be held liable and responsible for paying the overtime premiums for such off the clock hours, in addition to double the sum as liquidated damages.

107. Said differently, while Defendant had a so-called policy to prevent and deter Therapists from working off the clock, Defendant knowingly, actively and/or constructively permitted Plaintiff and all others similarly situated to suffer to work off the clock and without being paid for all such overtime hours while reaping the benefits of their unpaid labor and sweat. Thus, Defendant knowingly didn't enforce its own alleged company policy, and knowingly disregarded it.

108. The FLSA holds that such off the clock work Defendant knew of or had reasons to know about but did nothing to preclude or halt the work, is the same as the Defendant encouraging and permitting the overtime hours. Accordingly, Defendant is liable to Plaintiff and all others similarly situated who worked overtime

hours without overtime pay during the preceding 3 years, and up through to the date of trial.

109.   Defendant maintained a De Facto Policy to discourage reporting and claiming overtime hours, but meanwhile reaped the benefits of the additional work activities and work hours of the Therapists. As a result, Defendant saved many millions of dollars in labor costs.

110.   At any given time throughout the preceding 3-year period, Regional Managers and others in supervisory positions were aware that Plaintiff and others similarly situated were working off the clock and that their timesheets were inaccurate and did not capture all their work hours.

111.   Indeed, all Therapists including Plaintiff were intimidated against reporting the extra compensable overtime hours and told to focus on their productivity goals and responsibilities while simultaneously being pressured to keep up the unreasonable workload or be subject to disciplinary action, including termination of their employment.

112.   The Defendant intentionally created a work environment that was oppressive, laced with fear and intimidation against reporting overtime hours and discouraged complaining about not being paid for all overtime hours, as claiming such overtime hours would draw ire and scrutiny of management.

113.   Defendant willfully and with reckless disregard for the requirements of the FLSA and its regulations, failed to pay Plaintiff and the Putative Class, comprised of all current and former Therapists, a premium or overtime wages for all work hours over (40) hours in one or more work weeks as mandated by FLSA §207.

114.   Defendant does not have a good faith basis for these described unlawful pay practices, such that Plaintiffs and each and every member of the putative class is entitled to be paid an equal sum in overtime wages owed at rates of one and one half times their respective regular rates of pay as liquidated damages. *See Johnson v. Big Lots Stores, Inc.*, 604 F.Supp.2d 903 at 925 (E.D. La. 2009).

115.   Defendant knowingly and willfully failed to track the hours worked by Plaintiff and the class of similarly situated employees who comprise the Putative and proposed Class or classes.

116.   Defendant encouraged and pressured Therapists to work as many hours as they had to in order to handle all their job duties and responsibilities and has direct, if not constructive knowledge of Therapists working overtime hours while off the clock.

117.   By failing to record, report, and/or preserve records of all minutes and hours worked by Plaintiff and the class of similarly situated, the Defendant failed to make, keep, and preserve records with respect to each of its employees sufficient to

determine their wages, hours, and other conditions of employment in violation of the FLSA 29 USC 201 et seq., including 29 USC Sec. 211(c) and 215 (a).

118.  Defendant knew or should have known that the act of permitting Therapists to work off the clock or underreport their actual work hours evades the wage and hour requirements of the FLSA such that a three (3) year statute of limitations applies.

119.  To summarize, Defendant willfully and lacking in good faith, violated the FLSA by the following unlawful pay practices applicable to Plaintiffs, and the class of similarly situated persons:  a) maintaining a De Facto policy against reporting all overtime hours worked and working overtime hours on the clock through the use of a "productivity" requirement; and c) permitting Hovorka and all other similarly situated Therapists to suffer to work off the clock without being paid for all hours worked.

120.  As a result of Defendant's willful violations of the FLSA, Plaintiff and the Plaintiff Class or classes, composed of all other present and former Therapists and others similarly situated, have suffered economic damages by Defendant's failure to pay overtime compensation in accordance with FLSA §207.

121.  Due to Defendant's willful violations of the FLSA, a three-year statute of limitations applies to the FLSA violations committed by Defendant pursuant to 29 U.S.C. §255(a), and Plaintiffs and those similarly situated are required to be paid

for all unpaid overtime hours incurring over the preceding 3 years from the filing of this complaint.

122.   As a result of Defendant's unlawful acts and pay practices described herein, Plaintiff and the Putative Class of all other similarly situated non-exempt employees have been deprived of overtime compensation in amounts to be determined at trial; and are entitled to recovery of all such amounts, plus the payment of liquidated damages in an amount equal to the overtime wages due and awarded, payment of prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. §216(b), as well as injunctive relief pursuant to 29 U.S.C. §217.

## <u>COUNT II</u>

### <u>CLASS ACTION PURUSANT TO RULE 23 FOR VIOLATION OF THE OVERTIME REQUIREMENTS OF ILLINOIS MINIMUM WAGE LAW 820 ILCS § 105/1, et seq. ON BEHALF OF ALL OTHERS SIMILARLY SITUATED</u>

123.   Plaintiff Hovorka, individually and on behalf of all others similarly situated employees of Defendant who worked in the state of Illinois herein re-allege and incorporate all the allegations in paragraphs one (1) through forty-three (43); and  seventy-six (76) through (96) of this Complaint and fully restate and reallege all facts and claims herein as if fully stated.

124. The overtime wage laws for hourly paid, non-exempt employees under Illinois law are identical in all respects to the FLSA, both of which mandate payment for all overtime hours worked.

125. At all times relevant to the action, Defendant was an employer covered by the overtime mandates of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1, et seq.

126. Plaintiff Hovorka, and the Rule 23 Illinois putative Class members are employees entitled to the IMWL's protections as employees under this Act.

127. Plaintiff Hovorka was at all times material a member of the Illinois Class and was similarly situated to the members she seeks to represent.

128. The IMWL entitles employees to compensation for every hour worked in a workweek, and time and one half their regular rate of pay for all overtime hours worked that Defendant knew or should have known about.

129. Plaintiff Hovorka and all others similarly situated of the Illinois state law class were classified as non-exempt, hourly paid employees under the state and Federal wage laws and entitled to be paid premiums for all hours worked more than 40 in each workweek.

130. The IMWL entitles employees to overtime compensation "not less than time and one-half of the regular rate of pay of the employee for those hours in

excess of 40 hours per week." *See* 820 ILCS 105/4a (from Ch. 48, par. 1004a) Sec. 4a. (1).

131. Defendant violated the IMWL by regularly and repeatedly failing to compensate Plaintiff Hovorka and the Rule 23 Illinois Class for all overtime hours worked, meaning all hours worked more than 40 in any work week. (820 ILCS 105/4a) (from Ch. 48, par. 1004a, Sec. 4a. (1))

132. The foregoing conduct, as alleged, violates IMWL and any relevant rules adopted by the State of Illinois. At all relevant times, Defendant was, and continues to be, an "employer" within the meaning of the IMWL. At all relevant times, Defendant employed "employee[s]," including each of the members of the Illinois Class, within the meaning of the Illinois Wage Laws.

133. The Illinois Wage Laws require an employer, such as Defendant, to pay all compensation due to employees on their regular paydays, and the failure to do so entitles Hovorka, and the putative class of similarly situated employees that worked in Illinois, a penalty of 5% for each month such wages remain unpaid.

134. Plaintiff Hovorka and the class of similarly situated employees were forced, coerced and encouraged to to work off-the-clock overtime hours, with Defendant's knowledge. At all relevant times, Defendant had a policy and practice of failing and refusing to pay overtime compensation to the Illinois Wage Class

members for their hours worked in excess of forty hours per workweek by permitting them to suffer to work off the clock.

135. Defendant willfully violated Illinois Wage Laws including, but not limited to, **820 ILCS 105/4a (from Ch. 48, par. 1004a), Sec. 4a.,** by failing to pay Plaintiff Hovorka as well as the Illinois Class members, overtime premiums for all work performed in excess of forty hours in a workweek. Accordingly, Select failed and refused to pay all wages accrued to these workers on their regularly scheduled paydays.

136. As a result of Defendant's failure to record, report, credit, and furnish to each member of the Illinois Class their respective wage and hour records showing all wages earned and due for all work performed, Defendant failed to make, keep, preserve, and furnish such records in violation of **820 ILCS § 105/1 et seq**.

137. Plaintiff Hovorka and the Illinois Class seek recovery of attorneys' fees, costs, and expenses of this action to be paid by Defendant.

138. Plaintiff Hovorka and the Illinois Class seek damages in the amount of their respective unpaid overtime wages earned and due at their regular hourly rate, and at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek.

139. As a result, Illinois Class members have and will continue to suffer loss of income and other damages. Accordingly, Hovorka and the Rule 23 Illinois

Class are entitled to recover their unpaid wages owed, plus three times the sum owed as treble damages, a 5% penalty and interest for each month such wages were not timely paid, plus reimbursement and recovery of their incurred litigation costs, attorneys' fees, and other appropriate relief under the IMWL at an amount to be proven at trial.

**WHEREFORE,** Plaintiff LINDA HOVORKA, individually, and on behalf of all other similarly situated, past and present Therapists, seek the following relief:

a. Designation of this action as a collective action and conditionally certify this action as a "Collective Action" pursuant to the Seventh Circuit's two-stage process;

b. That Plaintiff HOVORKA be allowed to send notice of this collective action under court supervision to all past and present Therapists employed by Defendant at any time during the three (3) year period immediately preceding the filing of this suit, through and including the date of this Court's issuance of the Court Supervised Notice for each respective class(es); and further ORDER Defendant to produce a list of all similarly situated Therapists and working in any facility in the United States and its Territories within the preceding 3 years to the present;

c. Designate Plaintiffs, HOVORKA a the representative of the Collective Class members who opt-in as party plaintiffs for purposes of engaging in

mediation, with the authority to execute any Collective or Class settlement agreement the parties might reach; and the Court appoint the lawyers of Feldman Legal Group, including attorney Mitchell Feldman, Esq., as class counsel for the FLSA collective class;

d. That all past and present Therapists be informed of the nature of this Collective Action, and the similarly situated employee's right to join this lawsuit if they believe that they worked overtime hours without being paid overtime premiums or legally required pay for all such hours worked;

e. That the Court find and declare Defendant in violation of the overtime compensation provisions of the FLSA;

f. That the Court find and declare Defendant's violations of the FLSA were and are willful and that Defendant's time records should be declared unreliable, inaccurate and a violation of 29 CFR part 516, and any and all remedies and relief granted to the Plaintiffs and all others similarly situated who opt into this action;

g. That the Court enjoin Defendant, under 29 U.S.C. § 217, from withholding future payment of overtime compensation owed to members of the Putative Class or Collective;

h. That the Court award to Plaintiffs, HOVORKA, and all others similarly situated who consent to join this action as party plaintiffs, overtime

compensation at a rate of one-and one-half (1.5x) times their regular rates of pay, including the value of all compensation earned, for previous hours worked in excess of forty (40) for any given week during the past three years up through the date of trial;

i. That the Court award all Plaintiff an equal sum in overtime wages as liquidated damages pursuant to FLSA 216(b);

j. That the Court award Plaintiff, Hovorka and the Plaintiffs who opt into this action, recovery of their reasonable attorneys' fees and costs and expenses of litigation pursuant to FLSA § 216, including expert fees;

k. That the Court issue an order of judgment pursuant to 29 U.S.C 216-17, 28 U.S.C. §§ 2201 and 2202 finding that the Defendant unlawfully and willfully violated the FLSA by failing to pay overtime wages and failing to accurately record all hours worked of non-exempt employees, as well as issue an injunction barring the Defendant from further violations of the FLSA;

l. Award Prejudgment and post-judgment interest, as provided by law;

m. That the Court certify the proposed putative Illinois class pursuant to Rule 23 and award damages to all those similarly situated, including treble damages and penalties of 5% for each month such awarded overtime wages are past due;

n. That the Court appoint Hovorka as class representative of the Illinois class and the lawyers of Feldman Legal Group, including attorney Mitchell Feldman, Esq., as class counsel for the Illinois class;

o. Award Plaintiff Hovorka, and all current and future opt in Plaintiffs who were employed in the state of Illinois, treble damages for all overtime wages awarded plus 5% penalty for each month such wages were unpaid;

p. That the Court award attorney's fees and costs and expenses of litigation incurred pursuant to IMWL; AND

q. That the Court award any other legal and equitable relief as this Court may deem appropriate, including the value of underpaid matching funds in company pension or 401k plans.

## **<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Respectfully submitted August 7, 2023.

> */s/Mitchell L. Feldman*
> **Mitchell L. Feldman, Esq**
> Florida Bar No. 0080349
> FELDMAN LEGAL GROUP
> 6916 West Linebaugh Avenue, # 101
> Tampa, Florida 33625
> Tel: (813) 639-9366
> Fax: (813) 639-9376
> Mfeldman@flandgatrialattorneys.com
> Mail@feldmanlegal.us

*Lead counsel and attorney  for Plaintiff and the class of similarly situated*